IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MAUREEN TOFFOLONI
as Administrator and Personal
Representative of the Estate of Nancy
E. Benoit,

   Plaintiff,

    v.

LFP PUBLISHING GROUP, LLC
doing business as
Hustler Magazine, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:08-CV-421-TWT

ORDER

This is an action seeking damages arising out of the publication of nude photographs in Hustler Magazine. It is before the Court on the Plaintiff's Motion to Exclude the Testimony of Dr. Gregory C. Lisby [Doc. 119], the Plaintiff's Motion for Partial Summary Judgment [Doc. 120], the Defendant's Motion for Summary Judgment [Doc. 124], and the Defendant's Motion to Exclude the Testimony of Dr. Usha Nair-Reichert [Doc. 125]. For the reasons stated below, the Plaintiff's Motion to Exclude the Testimony of Gregory C. Lisby [Doc. 119] is GRANTED, the Plaintiff's Motion for Partial Summary Judgment [Doc. 120] is GRANTED, the

Defendant's Motion for Summary Judgment [Doc. 124] is DENIED, and the Defendant's Motion to Exclude the Testimony of Dr. Usha Nair-Reichert [Doc. 125] is GRANTED.

## I. Introduction

Plaintiff Maureen Toffoloni is the mother of Nancy Benoit. Ms. Benoit was "a model, professional woman wrestler and public figure." (Compl. ¶ 15.) Her husband, Christopher Benoit, was a well-known professional wrestler. Mr. Benoit murdered Ms. Benoit in June 2007 and then committed suicide. Defendant LFP Publishing Group publishes Hustler Magazine, a self-styled "Gentlemen's Magazine." (Def.'s Mot. to Dismiss, at 1.) In the March 2008 issue of Hustler, LFP published an article about Ms. Benoit that included nude photographs of her that were taken approximately twenty years earlier. It is undisputed that LFP did not have the consent of Ms. Benoit or her estate to publish the pictures.

On February 4, 2008, Toffoloni filed suit in the Superior Court of Fayette County, Georgia, seeking to enjoin the publication of the nude and semi-nude photographs in the March 2008 edition of Hustler Magazine and seeking damages for the violation of Ms. Benoit's right of publicity. The case was removed to this Court, which denied the Toffoloni's motion for a temporary restraining order on February 8, 2008. On October 6, 2008, the Court granted LFP's motion to dismiss the

complaint pursuant to Rule 12(b)(6) for failure to state a claim, finding that the photographs fell under the "newsworthiness" exception to Georgia's right of publicity. Toffoloni appealed the decision to the United States Court of Appeals for the Eleventh Circuit, which reversed the decision and remanded the case for further proceedings.

On remand, Toffoloni moved for partial summary judgment with respect to liability. The Court denied the motion pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, finding that additional discovery could raise issues of fact as to whether Toffoloni is a party-in-interest with legal standing to assert a posthumous claim for the violation of Ms. Benoit's right of publicity and whether Ms. Benoit signed a release or otherwise authorized the publication of the images. Discovery is now complete, and both parties move for summary judgment.

## II.  Motions to Exclude Expert Testimony

### A.  Legal Standard

Federal Rule of Evidence 702 governs the admission of expert opinion testimony. Pursuant to that rule, before admitting expert testimony a court must consider: (1) whether the expert is qualified to competently testify regarding the matters he intends to address; (2) whether the methodology used to reach his conclusions is sufficiently reliable; and (3) whether the testimony is relevant, in that it assists the jury to understand the evidence or determine a fact in issue. Fed. R. Evid.

702; Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). The party offering the expert's testimony has the burden to prove it is admissible by a preponderance of the evidence. Allison v. McGhan Medical Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).

    B.    Dr. Usha Nair-Reichert

Toffoloni submitted the expert report of Dr. Usha Nair-Reichert, an economics professor at the Georgia Institute of Technology, to support her claim for damages. Dr. Nair-Reichert identified three categories of damages caused by the unauthorized publication of the Benoit photographs: (1) short-term financial gains to LFP; (2) long-term financial gains to LFP; and (3) losses to the Benoit estate. To calculate the short-term financial gains to LFP, Dr. Nair-Reichert estimated the value of the photographs. She compared the Benoit feature to a feature on Wendy Cortez, a prostitute allegedly hired by Louisiana Senator David Vitter. In March 2006, LFP paid Cortez $45,000 for an exclusive interview, a four-page article with photographs in the December 2007 issue, a five-page article with photographs in the January 2008 issue, a cover inset in the January 2008 issue, and participation in a promotional press conference and radio and television interviews. Dr. Nair-Reichert estimated that the images of Ms. Benoit were worth four to five times as much as the Cortez interview, images, and promotional appearances. She said that she concluded that the Benoit images were

worth more because Ms. Benoit was a bigger celebrity. She based this assumption on Google search results. Dr. Nair-Reichert also noted that the Benoit images were more unique because Ms. Benoit could not pose for more photographs and more scarce because the Benoit estate did not want to release them. Based on this information, Dr. Nair-Reichert concluded that the Benoit photographs were worth somewhere between $160,000 and $200,000.

To determine the long-term financial gains to LFP, Dr. Nair-Reichert examined LFP's total revenues and annual net operating contribution from March 2008 to December 2008 – $13.031 million and $5.054 million, respectively. She estimated that approximately 2% of these figures was attributable to the Benoit photographs, concluding that the long term benefits to LFP ranged between $101,080 and $260,620. She explained that she chose 2% because the cover reference to the photographs comprised approximately 2% of the March 2008 cover.

To determine the losses to the Benoit estate, Dr. Nair-Reichert calculated how much the family would have been able to earn through sales of a "tribute DVD." She estimated that the family would have been able to sell 15,000 to 20,000 tribute DVDs at approximately $19.99 per DVD. She assumed a production cost of $5 per DVD and concluded that profits would have ranged from $224,850 to $299,800. She based her assumptions on information from the World Wrestling Entertainment (WWE) website

claiming that 3.31 million professional wrestling DVDs were sold in 2009. She concluded that these profits constituted losses to the Benoit estate because the Hustler photographs reduced the market for the hypothetical tribute DVD.

LFP says that Dr. Nair-Reichert's testimony should be excluded because Toffoloni has not shown that Dr. Nair-Reichert's methodology is sufficiently reliable. See Daubert, 509 U.S. at 589. The Court agrees. With respect to LFP's short-term financial gains, Dr. Nair-Reichert did not adequately explain why she decided that the Benoit photographs were worth four to five times the amount of the Cortez photographs. She said that she used Google searches to determine the relative popularity of the two women but did not show how this seemingly imprecise method is objectively reliable. With respect to LFP's long-term gains, Dr. Nair-Reichert did not adequately describe why she concluded that the Benoit feature accounted for 2% of Hustler's revenue over a nine-month period based on how much space the headline occupied on the March 2008 cover. Again, she offered no objective support for the reliability of this algorithm and identified no other circumstances in which it has been used. Finally, with respect to the estate's losses, Dr. Nair-Reichert relied primarily on unverified figures from the WWE's website and extrapolated from those figures a total sales figure for a hypothetical tribute DVD. Again, she did not adequately explain how she reached the total sales figure or show how this method meets the

reliability standard under Daubert. Notably, Dr. Nair-Reichert has no experience or training in the fields of intellectual property licensing, professional wrestling, magazine publishing or video production and sales. Her calculations are, therefore, entirely subjective and not based upon expertise that will assist the jury in calculating LFP's unjust enrichment. The Plaintiff has the burden of showing the reliability of her expert's methodology and data. She does not meet that burden by pointing out that the Defendant has not produced its own expert. Accordingly, Dr. Nair-Reichert's testimony is inadmissible.

### C. Dr. Gregory Lisby

LFP submitted the affidavit and expert report of Dr. Greg Lisby, a professor at Georgia State University, to support its arguments that the photographs of Ms. Benoit were newsworthy and that LFP reasonably believed at the time of publication that the photographs were newsworthy. The testimony is not admissible for either purpose.

First, Dr. Lisby's testimony is not admissible for purposes of showing that the photographs were newsworthy. Whether the photographs are protected as newsworthy is a question of law which the Eleventh Circuit has already decided. See Toffoloni v. LFP Publ'g Group, LLC, 572 F.3d 1201, 1208-09 (11th Cir. 2009); see also Anderson v. Suiters, 499 F.3d 1228, 1237 (10th Cir. 2007); Lemerond v. Twentieth Century Fox Film Corp., No. 07-Civ-4635, 2008 WL 918579, at *2

(S.D.N.Y. Mar. 31, 2008). But see Virgil v. Time, Inc., 527 F.2d 1122, 1130 (9th Cir. 1975) (submitting question of newsworthiness to jury). Rule 702 does not permit expert testimony offered for purposes of stating a legal conclusion. For example, in Anderson v. Suiters, a rape victim sued a television station for violating her right to privacy after the station aired a videotape showing the crime. The parties disputed whether the newsworthiness exception applied. The plaintiff offered expert testimony that the incident was not newsworthy. The United States Court of Appeals for the Tenth Circuit held that the expert testimony should not be considered because it was a legal opinion on an issue of law. Anderson, 499 F.3d at 1237. Likewise, Dr. Lisby's testimony is inadmissible for purposes of showing that the photographs were newsworthy.

Dr. Lisby's testimony is also inadmissible for purposes of showing that LFP's actions do not warrant punitive damages. As discussed below in Section III(C), punitive damages may be awarded where there is clear and convincing evidence that a defendant's actions showed "willful misconduct." O.C.G.A. 51-12-5.1(b). LFP says that it acted innocently because it believed that the photographs were subject to the newsworthiness exception. It asks the Court to admit Dr. Lisby's testimony to show that this belief was reasonable. However, the question for the jury is whether LFP subjectively believed at the time of its decision that the photographs were

newsworthy. Expert testimony offering a legal conclusion based on research completed after the photographs were published will not help a jury decide what LFP believed at that time. Accordingly, Dr. Lisby's testimony is inadmissible for this purpose as well.

### III. Motions for Summary Judgment

#### A. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

#### B. Liability

"[T]he appropriation of another's name and likeness . . . without consent and for the financial gain of the appropriator is a tort in Georgia." Martin Luther King, Jr.,

Ctr. for Soc. Change, Inc. v. American Heritage Prods., Inc., 694 F.2d 674, 680 (11th Cir. 1983).  A "newsworthiness" exception exists "where an incident is a matter of public interest, or the subject matter of a public investigation."  Waters v. Fleetwood, 212 Ga. 161, 167 (1956).  Here, the parties do not dispute that LFP appropriated Ms. Benoit's name and likeness without her consent.  However, LFP says that its use of the nude photographs was not for financial gain, that LFP was not unjustly enriched, and that the newsworthiness exception applies notwithstanding the Eleventh Circuit's decision.  The Court disagrees.

First, it is clear that LFP published the photographs for financial gain.  Hustler is sold for the images it contains.  The cover of the March 2008 magazine reads, "Wrestler Chris Benoit's Murdered Wife Nude."  No reasonable juror could conclude that LFP did not publish the photographs and the article for financial gain.

Second, Toffoloni has produced sufficient evidence that she suffered damages.  The measure of damages in a right of publicity case is the value of the use of the appropriated publicity.  Martin Luther King, Jr., Ctr. for Soc. Change, 250 Ga. at 143.  The evidence shows that LFP made significant profits off the March 2008 issue and that the reaction to the Benoit photographs was "huge and overwhelmingly positive." (Johnson Dep. at 11.)  Yet LFP did not pay the Benoit estate anything for the photographs.  Accordingly, there is no question that Toffoloni suffered damages.

Third, the Eleventh Circuit has already ruled that the newsworthiness exception does not apply here. On appeal, the court explicitly held that the photographs were not incidental to the biographical article. Toffoloni v. LFP Publ'g Group, LLC, 572 F.3d 1201, 1209 (11th Cir. 2009). It noted that the March 2008 magazine cover and table of contents both referred to the photographs instead of the corresponding biography. Id. It also observed that the biographical article comprised only one-third of the first page of a two-page spread. In contrast, the photographs covered the entire second page and approximately one-third of the first page. Id. The title, which read, "EXCLUSIVE PICS! EXCLUSIVE PICS! NANCY BENOIT Au Naturel: The long-lost images of wrestler Chris Benoit's doomed wife," covered the remaining third of the first page. Id. The court also explicitly rejected the argument that Ms. Benoit's nudity was in and of itself newsworthy. Id.

LFP argues that this holding is not binding because it was made without a fully-developed record. It says that the current record undermines three factual assumptions made by the Eleventh Circuit at the motion-to-dismiss stage: (1) that Ms. Benoit requested that the video footage of her nude photo shoot be destroyed; (2) that the article was a pretext to publish the images; and (3) that Ms. Benoit's decision to pose nude was not in and of itself newsworthy. There is no reason to believe that the Eleventh Circuit based its conclusion about newsworthiness on the first assumption.

Whether Ms. Benoit consented is irrelevant to that inquiry. Moreover, the second and third findings are legal conclusions not factual assumptions, and the facts underlying those conclusions have not changed. See Toffoloni, 572 F.3d at 1208-09 (noting that its findings were based on "an intensive review of both the relationship between the published photographs and the corresponding article, as well as the relationship between the published photographs and the incident of public concern - Benoit's murder"). Therefore, there is no reason to revisit the issue of newsworthiness. Accordingly, Toffoloni is entitled to summary judgment with respect to liability.

### C.   Punitive Damages

LFP also moves for summary judgment with respect to punitive damages. In Georgia, punitive damages may be awarded in tort cases where there is clear and convincing evidence that a defendant's actions showed "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. 51-12-5.1(b); see also Cabaniss v. Hipsley, 114 Ga. App. 367, 387 (1966) (punitive damages permissible where "the acts of the defendant have been of a character to import premeditation or knowledge and consciousness of the appropriation and its continuation"). Punitive damages are not available where the defendant acted innocently - for example, in a right to publicity case where the defendant believed that

the plaintiff had given consent. <u>Brown v. Capricorn Records, Inc.</u>, 136 Ga. App. 818, 821 (1975). Here, LFP says that it acted innocently because it believed that the photographs were subject to the newsworthiness exception. However, what LFP believed at the time of publication is a question for the jury. Accordingly, LFP is not entitled to summary judgment.

## IV.  <u>Conclusion</u>

For the reasons stated above, the Plaintiff's Motion to Exclude the Testimony of Gregory C. Lisby [Doc. 119] is GRANTED, the Plaintiff's Motion for Partial Summary Judgment [Doc. 120] is GRANTED, the Defendant's Motion for Summary Judgment [Doc. 124] is DENIED, and the Defendant's Motion to Exclude the Testimony of Dr. Usha Nair-Reichert [Doc. 125] is GRANTED.

SO ORDERED, this 23 day of November, 2010.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge